**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

EDSEL DORROUGH,                          )
                                         )
                    Plaintiff,           )
                                         )     **CIVIL ACTION**
v.                                       )
                                         )     **No. 12-4025-JWL**
CAROLYN W. COLVIN,[1]                    )
Acting Commissioner of Social Security,  )
                                         )
                    Defendant.           )
_____  )


**MEMORANDUM AND ORDER**


Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security Disability(SSD) benefits and

Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and

1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and

1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Commissioner's final

decision, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.     Background**

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of
Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the
defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

Plaintiff applied for SSD and SSI on September 12, 2008, alleging disability beginning July 2, 2008. (R. 21, 131-38). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 21, 70-73, 90-91). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael D. Shilling on August 25, 2010. (R. 21, 37-38). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 21, 37-69). ALJ Shilling issued his decision on September 23, 2010 finding that although Plaintiff has severe impairments which prevent performance of his past relevant work; including chronic obstructive pulmonary disease, rheumatoid arthritis, degenerative disc disease of the cervical spine, scoliosis, hypothyroidism, affective mood disorder, and anxiety related disorder; there are jobs that exist in significant numbers in the economy that Plaintiff can perform, and therefore, he is not disabled within the meaning of the Act. (R. 21-31). Consequently, the ALJ denied Plaintiff's applications for benefits. (R. 31).

Plaintiff requested review of the ALJ's decision by the Appeals Council and submitted additional medical evidence for the Council's consideration. (R. 14-17, 516-755). The Appeals Council received the additional evidence and made it a part of the administrative record in this case. (R. 5). The Council considered the additional evidence but found that it does not provide a basis for changing the ALJ's decision. (R. 1). It found no reason under the rules of the Social Security Administration to review the decision, and denied Plaintiff's request for review. (R. 1). Therefore, the ALJ's decision

became the final decision of the Commissioner; (R. 1); <u>Blea v. Barnhart</u>, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. <u>Weinberger v. Salfi</u>, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); <u>Brandtner v. Dep't of Health and Human Servs.</u>, 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).

When deciding if substantial evidence supports the ALJ's decision, the mere fact that there is evidence in the record which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Moreover, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if he can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and

1382c(a)(3)(A)); <u>accord</u>, <u>Lax</u>, 489 F.3d at 1084. The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010);[2] <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. <u>Id.</u>

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his

_____

[2]Because the Commissioner's decision was issued on September 23, 2010, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes three arguments, each claiming error in one aspect of the ALJ's credibility determination. First, he claims that the ALJ used improper boilerplate findings in evaluating Plaintiff's activities of daily living. He then claims the ALJ relied upon Plaintiff's failure to pursue or to follow prescribed treatment, but failed to apply the factors recognized by the court in Frey v. Bowen, 816, F.2d 508, 517 (10th Cir. 1987) (the Frey test). Finally, Plaintiff claims the ALJ provided insufficient analysis regarding the lay opinion of Plaintiff's wife regarding Plaintiff's limitations.

The Commissioner responds to each claim. She argues that the ALJ properly considered Plaintiff's daily activities as but one factor in his credibility determination and properly explained the rationale supporting his analysis. She argues that the ALJ did not use a failure to pursue or to follow prescribed treatment as a basis to find Plaintiff's allegations incredible, but rather used the inconsistency between Plaintiff's allegation that he could not afford continued mental health treatment and his apparent ability to continue

to purchase cigarettes.  In the alternative, the Commissioner argues that even if it was error not to consider the <u>Frey</u> test, the error is harmless "because the ALJ considered the entire record, set forth the specific evidence upon which he relied, and based his determination on substantial evidence in the record."  (Comm'r Br. 10).  Finally, the Commissioner argues that the ALJ properly considered the opinion of Plaintiff's wife, and explained his reasons for discounting it.  Because the court's review of the Commissioner's credibility determination is deferential, the court finds no error in the decision at issue.

## III.    Analysis

### A.    Standard for Evaluating the ALJ's Credibility Determination

An ALJ's credibility determinations are generally treated as binding on review. <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994); <u>but see</u> <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133

(10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for evaluating subjective testimony

regarding symptoms. Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

In evaluating credibility, the Luna court noted a list of factors the Tenth Circuit has

recognized which should be considered in credibility determination, and recognized that

the Secretary of Health and Human Services had also noted several factors for

consideration. Luna, 834 F.2d at 165-66 (citing Polaski v. Heckler, 751 F.2d 943, 948

(8th Cir. 1984), judgment vacated on other grounds sub nom Bowen v. Polaski, 476 U.S.

1167 (1986)). The Luna court recognized that "no such list can be exhaustive." Id. at

166. The factors recognized by courts in the Tenth Circuit include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489). Subsequent to Luna and Polaski, the Secretary promulgated regulations explaining the factors considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. Evaluation of Symptoms, Including Pain, 56 Fed. Reg. 57,928, 57,941-43, 57,944-46 (Nov. 14, 1991) (codified at 20 C.F.R. §§ 404.1529, 416.929).

**B.     The ALJ's Credibility Analysis**

Early in his RFC assessment, the ALJ explained the regulatory standard he applied to evaluate the credibility of Plaintiff's allegations of symptoms. (R. 25). He explained that the regulations provide a two-step process whereby the ALJ must first determine whether the claimant has a medically determinable impairment which could reasonably be expected to produce the symptoms alleged, and must then consider all of the record evidence to determine "the intensity, persistence, and limiting effects of the claimant's symptoms." (R. 25). He next summarized the record evidence and Plaintiff's allegations and reports of symptoms resulting from his impairments (R. 25-27), and stated his finding that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible." (R. 26). Toward the end of his RFC

assessment, the ALJ provided an analysis of the credibility of Plaintiff's allegations of

symptoms. (R. 28-29). Because Plaintiff's allegations of error all focus on the ALJ's

credibility determination, the court quotes the entire seven-paragraph analysis here:

> As is true in many disability cases, there is no doubt that the claimant is experiencing pain and mental functional limitations; the real issue is how severe the limitations are. Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991). Severe pain will often result in certain observable manifestations such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasms, prolonged bed rest or adverse neurological signs. In the present case, [(1)] no such signs exist and [(2)] the claimant's description of the severity of the pain and mental functional limitations has been so extreme as to appear implausible. [(3)] The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings or neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis. The undersigned notes [(4)] the claimant has not been prescribed pain modalities such as a TENS unit, a back brace, or an assistive device for ambulation, and [(5)] he has never been referred by a physician to a pain management clinic notwithstanding his complaints of debilitating pain. Additionally, [(6)] he dropped out of long-term psychological care, and [(7)] he has not required aggressive medical treatment, frequent hospital confinement, or surgical intervention. As to the claimant's complaints of constant left shoulder pain, [(8)] a February 2010 x-ray of the left shoulder was unremarkable. A March 2010 Magnetic Resonance Imaging (MRI) scan of the left shoulder showed possible tendinitis (Exhibit 13F, p.p. 2 and 5). [(9)] The clinical and objective findings herein are inconsistent with allegations of total debilitation. [(10)] The record is devoid of any evidence showing a significant gait disturbance, an indication that claimant continues to move about on a fairly regular basis.

> The claimant testified he spends most of his day lying down. In a Function Report completed in May 2009, the claimant reported he has to be reminded to take his medication and brush his hair and teeth. He said his wife has to wash his hair for him. He stated he can make himself a sandwich but does no other cooking. He said he washes the dishes occasionally, but it takes

him 2-3 hours. He said he no longer drives due to medication side effects and his physical problems. He indicated he has no interest in social activities and only gets out for doctor or therapist appointments (Exhibit 10E).

Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, [(11)] allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the [(12)] relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

The claimant's wife submitted a third party statement on his behalf and essentially reiterated the claimant's statements regarding functional limitations (Exhibits 11E). By virtue of the relationship as a family member of the claimant, the third party statement cannot be considered a disinterested party whose statement would not be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.

In a March 2010 statement, the claimant reported he does not drink alcohol or use drugs (Exhibit 17E). This statement is consistent with the record. However, the record reflects that the claimant has made inconsistent statements regarding matters relevant to the issue of disability. Contrasting his statements of extremely limited daily activities, the [(13)] Valeo Behavioral Health Care records from early 2009 reflect the claimant has the abilities to fish and take care of horses (Exhibit 11F, p. 2). Further, in contrast to the claimant's testimony that his daughter has to help him dress, [(14)] he told Dr. Robinson that he is able to dress and bathe himself (Exhibit 3F, p. 2). The claimant testified he was unable to afford to continue mental health treatment, however, [(15)] he apparently has been able to manage to afford to buy cigarettes, in spite of recommendations by his doctor to stop smoking due to chronic obstructive pulmonary disease (Exhibits 10F, 14F). Moreover, the [(16)] claimant's assertion that he has to use a cane is wholly unsupported by the record.

The claimant's representative contended the claimant is unable to work due to medication side effects. The [(17)] medical records, however, such as office treatment notes, do not corroborate those allegations.

The claimant had a fairly good work history prior to the alleged onset date of disability.

(R. 28-29) (numbering added for ease of identifying the ALJ's reasons for discounting the credibility of Plaintiff's allegations).

### C.    Improper Boilerplate Findings

Plaintiff's first allegation of error focuses on the third paragraph of the ALJ's credibility analysis as presented above, and quotes that paragraph in its entirety in his brief. (Pl. Br. 7). He argues that the "Tenth Circuit criticized identical language in Swanson v. Barnhart," 190 F. App'x 655, 657 (2006), and found that language troubling; because the Swanson court was unaware of "any statute, regulation, ruling or case law directing an ALJ to 'verify' by a 'reasonable degree of certainty' whether a claimant's daily limitations are as he or she alleges" (Pl. Br. 7) (quoting Swanson, at 657); because the court "was 'at a loss' as to what the ALJ meant by 'other reasons' and 'other factors' which hindered effective review;" and because "the ALJ did not explain how he reached the conclusion that the medical evidence was 'relatively weak.'" Id. at 8 (quoting Swanson at 657).

Plaintiff acknowledges that similar (and in many respects identical) boilerplate language was found not to be erroneous by the Tenth Circuit in Wall, 561 F.3d at 1069-70, and Qualls v. Astrue, 428 F. App'x 841, 847-48 (10th Cir. 2011), but argues that this

case is different. (Pl. Br. 8). He argues that "objective verifiability is not the appropriate standard for evaluating credibility, that a claimant does not need to produce direct evidence of the severity of his symptoms, and that the ALJ failed to consider the case law and regulatory factors for evaluating credibility. (Pl. Br. 8-10). He argues that the court "cannot be certain what the ALJ meant by 'other reasons' or 'other factors' that led to his decision," and that the ALJ "did not explain how he reached the conclusion that the medical evidence was 'relatively weak.'" (Pl. Br. 10-12).

The Commissioner argues that the ALJ did not apply an incorrect legal standard but properly considered daily activities as one factor in evaluating the credibility of Plaintiff's allegations. (Comm'r Br. 7-8). He argues that the ALJ articulated the other factors he considered in evaluating credibility and pointed to the medical evidence he found relatively weak in establishing the severity of Plaintiff's symptoms. Id.

The court agrees with the Commissioner. Plaintiff's argument attacks the ALJ's discussion of Plaintiff's daily activities as an argument in isolation, and does not place it in context within the decision at issue here. First, the ALJ had already stated the legal standard he applied to his credibility determination, and although he stated the standard in terms of the two-step analysis presented in the regulations, that analysis corresponds to the three-step framework explained in Luna. He determined whether Plaintiff had impairments which might produce the symptoms at issue and whether those impairments might reasonably be expected to produce the symptoms alleged, and because they could,

he considered all of the record evidence to determine how the symptoms limit Plaintiff's functioning.

Moreover, the paragraph upon which Plaintiff focuses in this argument is but one of seven paragraphs within the ALJ's credibility analysis, concerns only one of the relevant factors for evaluating credibility (the nature of daily activities), and contains but two of at least seventeen reasons given by the ALJ to discount the credibility of Plaintiff's allegations of disabling symptoms. Far from asserting a need to objectively verify Plaintiff's allegations of limitations to a reasonable degree of certainty, "the ALJ's statement was merely a common sense observation that the ALJ would not treat Claimant's testimony as 'strong evidence' of h[is] disability due to his prior determination that Claimant's testimony was not" credible. Wall, 561 F.3d at 1070. Plaintiff's assertion that the ALJ "focused on the lack of objective findings" (Pl. Br. 9), is also belied by the fact that the paragraph at issue is one small part of the credibility analysis and the fact that the reasons given to discount the credibility of Plaintiff's allegations also deal with Plaintiff's description of the severity of his symptoms, the lack of prescribed treatment for pain, the lack of referral for pain management, no evidence of gait disturbance, ability to fish and take care of horses, ability to dress and bathe himself, and inconsistencies between Plaintiff's allegations and the case record.

Plaintiff's argument that the decision "does not even mention many of the [regulatory and case law] factors required" to evaluate credibility ignores both the

multiplicity of factors evidenced in the ALJ's credibility analysis and the standard for evaluating credibility. As the court in <u>Qualls</u> noted,

> To be sure, an ALJ is required to do more than "simply recite[ ] the general factors he considered .... [without] refer[ring] to any specific evidence." <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). But "our opinion in <u>Kepler</u> does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relie[d] on in evaluating the claimant's credibility, the dictates of <u>Kepler</u> are satisfied." <u>Id.</u>

<u>Qualls v. Astrue</u>, 428 F. App'x at 846. This standard is met here--in spades.

The argument that the court cannot be certain what is meant by the ALJ's reference to "other reasons" or "other factors" is, likewise, unavailing. The ALJ stated that even if he accepted Plaintiff's assertion of the severity of limitation in her daily activities, it would be difficult to attribute that limitation to Plaintiff's medical condition rather than to "other reasons" in light of the relatively weak medical evidence and the "other factors discussed in this decision." (R. 28). In context, the "other factors" referred to by the ALJ are clearly the fifteen reasons given by the ALJ for discounting the credibility of Plaintiff's allegations of symptoms beyond the two reasons related to Plaintiff's daily activities. While it is not absolutely clear to what "other reasons" the limitations in Plaintiff's daily activities might be attributed, what is pellucid is the point of the ALJ's analysis–that even if the ALJ were to accept the alleged limitations in Plaintiff's daily activities he could not attribute them to Plaintiff's medical condition because of the overwhelming weight of contrary evidence when compared to the relatively weak medical evidence supporting the severity alleged by Plaintiff.

Finally, Plaintiff argues that the ALJ did not explain how he arrived at the conclusion that the medical evidence supporting the alleged severity of Plaintiff's symptoms is "relatively weak." (Pl. Brief 11). As the Commissioner points out, the ALJ in fact explained in the decision the weaknesses he found in the medical evidence supporting Plaintiff's claims. For example, he noted that although the evidence reflects a diagnosis of rheumatoid arthritis, "there is no laboratory evidence such as a sedimentation rate, antinuclear antibody testing or diagnostic scans . . . confirming this diagnosis." (R. 26). The ALJ noted that Plaintiff reported on psychiatric followup that he was doing better on medication (R. 27), and that the record reveals no significant pain treatment prescribed and no referral to a pain management clinic. (R. 28). The ALJ recognized that despite complaints of constant left shoulder pain, x-ray was unremarkable, and an MRI showed only "possible tendinitis." Id. Finally, the ALJ noted that no physician opined that Plaintiff is disabled or has limitations greater than those assessed by the ALJ. (R. 29). The decision is clear as to the reasons the ALJ found the medical evidence supporting disability "relatively weak." The court finds no improper boilerplate findings regarding Plaintiff's daily activities in the decision at issue here.

### D.    Analysis of the Opinion of Plaintiff's Wife

Plaintiff claims the ALJ provided insufficient analysis of Plaintiff's wife's (Vicki Brunson) third-party statement. He argues this is so because the ALJ failed to consider Ms. Brunson's statement as required by Social Security Ruling (SSR) 06-03p, because the rationale relied upon by the ALJ would make any testifying spouse not credible and

conflicts with the ALJ's duty to consider relevant reliable information from family members, and because the ALJ never discussed the specifics of Ms. Brunson's statement. (Pl. Br. 14-15). The Commissioner argues that the ALJ properly considered the statement in accordance with SSR 06-03p, specifically considering the nature of the relationship between Plaintiff and his wife, and noting that the wife's statement "essentially reiterated" Plaintiff's statements. The Commissioner argues that here the ALJ specifically discussed the statement of Plaintiff's wife, but that even a complete failure to discuss such a third-party statement is not error where the decision reveals that the ALJ considered the statement, and where the statement is largely cumulative of the claimant's testimony. (Comm'r Br. 10-11) (citing Blea, 466 F.3d at 914-15; Davis v. Astrue, 237 F. App'x 339, 342 (10th Cir. 2007)). The Commissioner concludes her argument: "Here, the ALJ explained his reasons for discrediting the statements made by Plaintiff and reiterated by his wife. Thus, the ALJ complied with SSR 06-03p, and further analysis was not required." (Comm'r Br. 11) (citation omitted).

As Plaintiff's argument suggests, Social Security regulations provide that the Commissioner will consider opinion evidence from third-parties when evaluating the credibility of a claimant's allegations of symptoms. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4) (evidence provided by "other non-medical sources" such as spouses, parents, care-givers, relatives, friends, or neighbors may be used "to show the severity of your impairment(s) and how it affects your ability to work"); 404.1529(c)(3), 416.929(c)(3) (In determining the credibility of a claimant's allegations of symptoms, the

Commissioner will "consider all of the evidence presented, including . . . observations by . . . other persons."). The Commissioner promulgated SSR 06-03p, West's Soc. Sec. Rep. Serv., Rulings 327-34 (Supp. 2013) explaining that the opinions of "other" non-medical sources such as spouses, parents, friends, and neighbors, must be considered in reaching a disability decision.

The Tenth Circuit has had the opportunity to consider the Commissioner's duty to consider third-party opinion evidence. Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The Adams court found "that the ALJ considered the testimony of claimant's wife in making his decision because the ALJ specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding that testimony. Id. Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects that the ALJ considered that testimony. Blea, 466 F.3d at 915.

In Blea, the plaintiff argued that remand was necessary because the ALJ failed to discuss or consider the lay testimony of the plaintiff's wife. Blea, 466 F.3d at 914. The Commissioner's decision in Blea did not mention any particulars of Mrs. Blea's testimony, and never even mentioned that she had testified regarding the nature and

severity of her husband's impairments.  Id. at 914.  The Commissioner asserted that there was no reversible error because the ALJ is not required to make written findings about each witness's credibility.  Id.  The court noted that the Commissioner had stated only part of the rule in this circuit and corrected the Commissioner, "[i]n actuality, the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'"  Id. at 915 (quoting Adams, 93 F.3d at 715).  The Blea court noted that the ALJ had not mentioned Mrs. Blea's testimony or referred to the substance of her testimony anywhere in the written decision, and concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in making his decision."  Id. (internal quotation marks, brackets, and citation omitted).  Therefore, the case was remanded for the Commissioner to consider Mrs. Blea's testimony properly.  Id.

The law in the Tenth Circuit is clear with regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors.  The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the particular weight accorded to that opinion.  Here, as quoted above at p. 11, the ALJ specifically discussed the third-party statement of Plaintiff's wife.  He found that the statement "essentially reiterated the claimant's statements regarding functional limitations," and noted that Plaintiff's wife's statement would "be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges."  (R. 28).

19

Contrary to Plaintiff's allegations, the decision clearly demonstrates that the ALJ considered Plaintiff's wife's statement under SSR 06-03p. Moreover, he specifically stated that he had "considered opinion evidence in accordance with the requirements of . . . SSR . . . 06-3p." (R. 25). Plaintiff's argument-that the ALJ never discussed the specifics of Plaintiff's wife's statement and that the ALJ's rationale for discounting the statement would "make any testifying spouse not credible,"--ignores the ALJ's finding that claimant's wife's statement "essentially reiterated the claimant's statements." (R. 28). In effect, the ALJ found that Plaintiff's allegations and his wife's allegations were the same, that his wife provided a statement which was colored by affection for Plaintiff and an apparent tendency to agree with Plaintiff's allegations, and that her statement must be discounted for the same seventeen reasons given for discounting Plaintiff's allegations. Plaintiff has shown no error in this rationale. Plaintiff admits that the examples to which he points in arguing that the ALJ should have discussed the specifics of Ms. Brunson's statements (that Plaintiff could not stand long enough to cook, could only lift a couple of pounds, and could only walk for ten to fifteen minutes) "largely corroborate Dorrough's testimony. (Pl. Br. 15). He shows no basis in the facts of this case for the proposition that the ALJ must address the credibility of Ms. Brunson's allegations separately from credibility of Plaintiff's allegations, especially since both sets of allegations are the same. The court finds no error in the ALJ's analysis of Plaintiff's wife's statement.

### E.    Noncompliance with Treatment (The Frey Test)

Plaintiff claims the ALJ relied upon Plaintiff's failure to pursue or to follow prescribed treatment, but failed to apply the factors recognized by the court in Frey, 816, F.2d at 517. The Frey court stated what has become known as "the Frey test:" that, "In reviewing the impact of a claimant's failure to undertake treatment, . . . [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." Id. The court has continued to apply the test in Thompson, 987 F.2d at 1490 and other cases thereafter. Plaintiff argues that the ALJ failed to consider whether there might be a justifiable excuse for Plaintiff's lack of treatment and failure to quit smoking, and that this is error requiring remand in this case. (Pl. Br. 12-14) (citing Frey, 816 F.2d at 517, and Thompson, 987 F.2d at 1490).

The Commissioner argues that the ALJ did not use a failure to pursue or to follow prescribed treatment as a basis to find Plaintiff's allegations incredible, but rather used the inconsistency between Plaintiff's allegation that he could not afford continued mental health treatment and his apparent ability to continue to purchase cigarettes. In the alternative, the Commissioner argues that even if it was error not to consider the Frey test, the error is harmless "because the ALJ considered the entire record, set forth the specific evidence upon which he relied, and based his determination on substantial evidence in the record." (Comm'r Br. 10).

As both parties agree, the ALJ did not apply the Frey test. The Commissioner's argument that the ALJ did not use a failure to pursue or to follow prescribed treatment but used the inconsistency between Plaintiff's allegation that he could not afford continued mental health treatment and his continued purchase of cigarettes is merely an exercise in semantics because the clear import of the ALJ's rationale in that regard was that Plaintiff's failure to continue mental health treatment was not justified because Plaintiff continued to purchase cigarettes even though he had been told to stop smoking because of his chronic obstructive pulmonary disease. Moreover, as the Commissioner admits, the determination that the failure to pursue treatment was not justified was made without applying the test specifically designed to control that determination--the Frey test. There can be no doubt that the ALJ erred in finding the failure to pursue treatment was unjustified without applying the Frey test. The only remaining question is whether that error was harmless in the circumstances of this case as the Commissioner argues. The court notes that Plaintiff did not file a Reply Brief in response to the Commissioner's harmless error argument.

The court finds the decision in Branum v. Barnhart, 385 F.3d 1268 (10th Cir. 2004) instructive in these circumstances. In that case, the ALJ found the plaintiff's allegations of disabling pain were not credible, and one of the reasons given for doing so was because "the evidence fails to reflect that claimant sought any definitive treatment." 385 F.3d at 1274. The court noted that the plaintiff was "correct that 'the ALJ may not discredit [her] for a lack of treatment or aggressive testing when . . . she has a legitimate

reason for [failing] to get additional treatment, such as a lack of funds.'" Id. (quoting the

plaintiff's brief which quoted Thompson, 987 F.2d at 1490).  Although the court

expressed "some concerns regarding the ALJ's reliance on plaintiff's alleged failure to

follow a weight loss program and her performance of certain minimal household chores,"

it concluded "that the balance of the ALJ's credibility analysis is supported by substantial

evidence in the record," and it affirmed the decision below.  Branum, 385 F.3d at 1274.

Here, Plaintiff has shown no other error in the ALJ's credibility analysis.  Additionally,

the ALJ expressed fifteen reasons to discredit Plaintiff's allegations of disabling

symptoms--even when the court ignores reasons number six ("he dropped out of long-

term psychological care) and number fifteen (although Plaintiff says he cannot afford

mental health treatment, he continues to buy cigarettes).  Moreover, the court's review of

an ALJ's credibility determination is deferential.  Even though the ALJ clearly erred in

failing to apply the Frey test, and the court is concerned about that error, remand is not

required in this case because the error was harmless, and substantial evidence in the

record supports the ALJ's decision.

     **IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

     Dated this 4th day of September 2013, at Kansas City, Kansas.


               s:/ John W. Lungstrum
               **John W. Lungstrum**
               **United States District Judge**